## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

**UNITED STATES OF AMERICA**

**v.**

**MICHAEL EDWARD WHITE**
**DAVID MITCHELLE WHITE**
**DAVID WAYNE HORTON**
**JOSHUA DANIEL ANDERSON**
   **and**
**SHANNON DELORES RODRIGUEZ**
   **a/k/a "Shannon Delores Harris"**
_____/

**SEALED**
**INDICTMENT**

5:19 cr 78 -RH

**THE GRAND JURY CHARGES:**

### COUNT ONE

### A. INTRODUCTION

At all times material to this Indictment:

1.    On October 10, 2018, Hurricane Michael caused severe damage to public and private property, public utilities, public buildings, public communications systems, public streets and roads, and public drainage systems within the City of Lynn Haven, Florida (Lynn Haven).

2.    On October 16, 2018, as a result of Hurricane Michael, Lynn Haven adopted a local state of emergency for post disaster relief and planning and


FILED USDC FLND TL
NOV 6 '19 PM3:17

approved Hurricane Michael Resolution No. 2018-10-16.  In the resolution, Lynn Haven waived the procedures and formalities otherwise required under Florida law to take action to ensure the safety, welfare, and health of the citizens of Lynn Haven, including: entering into contracts; incurring obligations; acquisition and distribution of materials, supplies, and other expenses related to the storm event; appropriation and expenditure of public funds; and the employment of permanent and temporary workers.  The resolution delegated emergency powers to the mayor of Lynn Haven, or her designee, to discharge the duties and exercise powers for the above described activities until the local emergency declared had expired and the resolution was rescinded.  The Declaration of Emergency was to be automatically renewed every seven days until further action was taken by Lynn Haven.

3. On October 23, 2018, as a result of Hurricane Michael, Lynn Haven again declared and reinstated a local state of emergency for post disaster relief and planning and entered Hurricane Michael Resolution No. 2018-10-23-002.  This Declaration of Emergency contained the same provisions as the original declaration of emergency and was effective for seven days.  The Declaration of Emergency was required to be renewed or it would automatically expire.

4. On October 30, 2018, Lynn Haven voted to end the local state of emergency and end the designation of the emergency powers to the mayor or her designee.

2

5.      Prior to Hurricane Michael, Lynn Haven had contracted with three disaster relief companies to provide disaster relief services for Lynn Haven following a hurricane.  These companies provided debris removal services for Lynn Haven after Hurricane Michael, submitted invoices with supporting documentation for their services, and received payment from Lynn Haven, which was reimbursed by the Federal Emergency Management Agency (FEMA) for the expenses.

6.      FEMA is an agency of the United States Department of Homeland Security, and is responsible for coordinating the federal government's response to natural and man-made disasters.  The primary purpose of FEMA is to coordinate the response to a disaster that has occurred in the United States and that overwhelms the resources of local and state authorities.  In addition to on-the-ground support of disaster recovery efforts, FEMA provides state and local governments with experts in specialized fields and the funding for rebuilding efforts for infrastructure.  FEMA also provides for the reimbursement of many expenses incurred by local governments in cleaning up and restoration after natural disasters, such as hurricanes.

7.      **MICHAEL EDWARD WHITE ("M. WHITE")** was hired by Lynn Haven as its City Manager on August 22, 2017.  As City Manager, **M. WHITE** was the administrative head of the municipal government and was responsible for

3

the day-to-day operations and administrative functions of Lynn Haven. The City Manager served at the pleasure of the Lynn Haven City Commission. **M. WHITE** resigned as city manager of Lynn Haven on March 26, 2019.

8.    Erosion Control Specialists ("ECS) was incorporated in the State of Florida on May 10, 2011. **DAVID MITCHELLE WHITE ("D. WHITE")** was listed as a director of ECS. In a 2018 amended annual report and a 2019 annual report filed with the State of Florida, **D. WHITE** was listed as a director and Vice President of ECS. ECS was not licensed in Florida to do contracting, electrical, or plumbing activities, and held no business licenses with the State of Florida.

9.    On October 22, 2018, **MICHAEL EDWARD WHITE**, on behalf of Lynn Haven, and **DAVID MITCHELLE WHITE**, as owner of ECS, signed an agreement for ECS to provide Lynn Haven with "Emergency And/Or Exigent Services, Ancillary Construction Services, or Construction Due To The Effects of Hurricane Michael." The agreement referenced ECS as a "contractor," with the effective date of October 11, 2018. The term of the agreement was for no more than 90 days to perform services for the project for Lynn Haven. As part of the agreement, ECS agreed to provide detailed invoices requesting payment for services accompanied by such documentation or data, including back-up documentation sufficient for reimbursement of expenses by FEMA for Lynn Haven payments to ECS.

10.    On or about October 28, 2018, **MICHAEL EDWARD WHITE**, on

behalf of Lynn Haven, and **DAVID MITCHELLE WHITE**, as owner of ECS,

signed an amended agreement for ECS to provide Lynn Haven with "Emergency

And/Or Exigent Services, Ancillary Construction Services, or Construction Due To

The Effects of Hurricane Michael."  Notably, the 90 day term in the original

agreement was replaced with no deadline; rather, the agreement provided the

duration to be "for such time as necessary to perform the services for the project."

Additionally, the amended agreement included new specific language advising **D.**

**WHITE** and ECS that FEMA financial assistance would be used to fund the

contract with Lynn Haven, that ECS would comply with all applicable federal

regulations, executive orders, as well as all FEMA policies, procedures, and

directives.  Under the amended agreement, ECS also agreed to provide FEMA with

access to its books and records, and was further advised of federal program fraud

and false statement prohibitions.

11.    On November 8, 2018, **MICHAEL EDWARD WHITE** and **DAVID**

**MITCHELLE WHITE** executed an "Exhibit A – Task order 18-001" that

ostensibly was an agreement under the Amended Agreement described in

paragraph #9 above, authorizing ECS to assist Lynn Haven in the removal of

residential trash.  The effective date of this "task order" was listed as three weeks

earlier – October 15, 2018, and the "task order" authorized payment to ECS of a

rate of $300.00 per hour per crew for removal of trash.  The task order stated that it would terminate upon notice by Lynn Haven, but was not to exceed 45 days from the effective date (October 15, 2018).

12.   **JOSHUA DANIEL ANDERSON** operated Greenleaf Lawn Care of Bay County, LLC ("Greenleaf"), which was purchased on or about November 23, 2016, by **ANDERSON** and his wife.  **ANDERSON** was listed as "CEO" in documents provided to the State of Florida.  In an Amended Annual Report for Greenleaf, filed with the State of Florida on December 20, 2016, S.A., the wife of **ANDERSON**, and T.W., the wife of **D. WHITE**, were listed as shareholders of Greenleaf.  A similar annual report was filed with the State of Florida for Greenleaf on April 4, 2018.  Greenleaf equipment was stored and maintained at the business location of ECS, and employees of Greenleaf often reported to work at ECS.

13.   On October 10, 2017, **JOSHUA DANIEL ANDERSON**, on behalf of Greenleaf, and **M. WHITE**, on behalf of Lynn Haven, executed a lawn maintenance contract to maintain the cemetery and lawns located at Lynn Haven public parks, cemeteries, and properties.  The contract was for a term of four years, and Lynn Haven agreed to pay Greenleaf $10,499.70 monthly for lawn maintenance services.  However, the contract allowed for additional services at seven specific Lynn Haven properties on an as needed basis, in accordance with

prices stated in the original proposal of Greenleaf.  In papers submitted to Lynn

Haven in support of the contract, **ANDERSON** represented himself as the owner

of Greenleaf.  The contract also provided that in the event of a hurricane, which

would prevent performing duties under the contract, the parties would be excused

from performance under the contract during the period of disability.  Nonetheless,

after Hurricane Michael, Greenleaf continued to submit and receive payment from

Lynn Haven for lawn cutting and debris and trash removal.

14.    In the first month of its contract (November 2017), **JOSHUA**

**DANIEL ANDERSON** and Greenleaf submitted a request for payment to Lynn

Haven under the contract for $277,372.80.  After Hurricane Michael,

**ANDERSON** and Greenleaf requested a $50,000 payment from Lynn Haven for

alleged debris clean-up two days after the hurricane hit Lynn Haven, and

$16,398.58 for alleged lawn services for Lynn Haven on October 30, 2018.  **M.**

**WHITE** approved the payments to **ANDERSON** and Greenleaf and issued a

handwritten Lynn Haven check to Greenleaf totaling $66,402.58.

15.    **DAVID WAYNE HORTON** was employed as the Community

Services Director for Lynn Haven, and was a department head for Lynn Haven.

**HORTON**, along with **M. WHITE,** approved invoices submitted by ECS for

work allegedly performed by ECS for Lynn Haven relating to post-Hurricane

Michael clean-up activities.  **HORTON** also approved ECS timesheets of

employees that were submitted in support of ECS invoices to Lynn Haven that were provided to FEMA and falsely verified the attendance of ECS employees at various claimed work locations.  **HORTON** accepted payment of some of his travel, lodging, meals, entertainment, and food from **D. WHITE** on a number of occasions.  After Hurricane Michael, **HORTON** caused **D. WHITE** to have ECS provide debris removal and repairs to his personal residence.  This service was billed to Lynn Haven by ECS, and Lynn Haven paid ECS.  **HORTON** also requested and obtained from ECS an invoice for the services provided at his residence, which **HORTON** submitted to his insurance company for payment.

16.    **SHANNON DELORES RODRIGUEZ, a/k/a "Shannon Delores Harris" ("RODRIGUEZ")** was the sister of **D. WHITE** and worked with **D. WHITE** at ECS.  **RODRIGUEZ** supervised a crew of ECS workers allegedly providing services to Lynn Haven for clean-up after Hurricane Michael.  **RODRIGUEZ** prepared and maintained time sheets of ECS workers that were submitted to Lynn Haven in support of ECS invoices requesting payment from Lynn Haven.

## B.  THE CHARGE

Between on or about October 10, 2018, and on or about April 30, 2019, in the Northern District of Florida and elsewhere, the defendants,

8

**MICHAEL EDWARD WHITE,**
**DAVID MITCHELLE WHITE,**
**DAVID WAYNE HORTON,**
**JOSHUA DANIEL ANDERSON,**
**and**
**SHANNON DELORES RODRIGUEZ,**
**a/k/a "Shannon Delores Harris,"**

did knowingly and willfully combine, conspire, confederate, and agree together

and with other persons to devise, and intend to devise, a scheme to defraud and for

obtaining money and property by means of material false and fraudulent pretenses,

representations, and promises, and to cause wire communications to be transmitted

in interstate and foreign commerce for the purpose of executing such scheme, in

violation of Title 18, United States Code, Section 1343.

### C.  MANNER AND MEANS

The manner and means by which this conspiracy was committed included

the following:

1. **DAVID MITCHELLE WHITE** used ECS as a means to
fraudulently obtain money from Lynn Haven.

2. **JOSHUA DANIEL ANDERSON** used Greenleaf as a means to
fraudulently obtain money from Lynn Haven.

3. **DAVID MITCHELLE WHITE** submitted invoices requesting
payment for services allegedly provided by ECS to Lynn Haven, but which were
false and fraudulent as to a number of material matters.

9

4.     **JOSHUA DANIEL ANDERSON** submitted invoices requesting payment for services allegedly provided by Greenleaf to Lynn Haven, but which were false and fraudulent as to a number of material matters.

5.     **MICHAEL EDWARD WHITE,** as City Manager of Lynn Haven, approved all ECS invoices and directed city employees to immediately pay ECS for those invoices, even though other contracted debris removal companies had to wait for payment of invoices submitted for Hurricane Michael disaster relief and debris removal.

6.     **DAVID WAYNE HORTON** approved ECS invoices and recommended payment, often immediately, by Lynn Haven.  **HORTON** also approved timesheets of employees that were submitted in support of ECS invoices to Lynn Haven that were provided to FEMA.  **HORTON** falsely verified the attendance of ECS employees at various claimed work locations.

7.     After Hurricane Michael, **HORTON** caused **D. WHITE** to have ECS provide debris removal and repairs to his personal residence.  This service was billed to Lynn Haven by ECS, and Lynn Haven paid ECS.  **HORTON** also requested and obtained from ECS an invoice for the servicers provided at his residence, which **HORTON** in turn submitted to his insurance company for payment.

8.      While **DAVID MITCHELLE WHITE** and ECS were providing services to Lynn Haven, **MICHAEL EDWARD WHITE** received things of value from **D. WHITE**, including repairs to, and debris removal from, **M. WHITE's** residence in Lynn Haven and his farm located outside Lynn Haven in Bay County, and money for the purchase of **M. WHITE's** farm and an automobile.

9.      These repairs to and debris removal from the residence and farm of **MICHAEL EDWARD WHITE** were billed to Lynn Haven with false invoices submitted by **DAVID MITCHELLE WHITE** to Lynn Haven with invoices falsely stating that work had been performed at locations in Lynn Haven. **M. WHITE** approved the ECS invoices and directed Lynn Haven employees to pay the invoices.

10.      While **DAVID MITCHELLE WHITE** and ECS were providing services to Lynn Haven, **DAVID WAYNE HORTON** received things of value from **D. WHITE**, including repairs to, and debris removal from, **HORTON's** residence in Lynn Haven.  Additionally, **HORTON** accepted payment of some of his travel, lodging, meals, entertainment, and food from **D. WHITE** on multiple occasions while **D. WHITE** and ECS were providing services to Lynn Haven.

11.      When ECS invoices were being assembled for submission to FEMA by Lynn Haven for reimbursement, it was discovered that most of the ECS invoices that had been paid provided no details in support of the requested

11

payments.  When directed to provide supporting documentation for the monies

requested and already paid, **DAVID MITCHELLE WHITE** submitted false time

sheets prepared by **SHANNON DELORES RODRIGUEZ**.  The time sheets were

false and fraudulent in that they included names of individuals who had not worked

at the claimed location, were off that day, worked at other projects outside Lynn

Haven, or had never worked for ECS at the time of the timesheet.  Additionally, in

many invoices, the specific Lynn Haven locations of work claimed to have been

done by ECS were false.  **DAVID WAYNE HORTON** approved and falsely

verified the timesheets claiming attendance of ECS workers at various Lynn Haven

locations.

12.    ECS invoices were submitted to Lynn Haven for payment of services

that were not authorized under the emergency contract and were for personal

residences of some Lynn Haven officials.  The performance of ECS post-hurricane

debris removal and repairs at the residences of some Lynn Haven officials were

concealed and not disclosed in the ECS invoices submitted by **DAVID**

**MITCHELLE WHITE.  MICHAEL EDWARD WHITE** approved the invoices,

and caused them to be paid to ECS by Lynn Haven.  The unauthorized ECS work

for Lynn Haven officials included:

12

    a.  The private residence in Lynn Haven and the farm located outside Lynn Haven in Bay County belonging to the Lynn Haven City Manager, **M. WHITE**;

    b.  The private residences of the Mayor of Lynn Haven and her mother;

    c.  The private residence of the Community Services Director of Lynn Haven, **DAVID WAYNE HORTON**;

    d.  The private residences of the Lynn Haven City Attorney and others as directed by the City Attorney; and

    e.  The private, gated community of a city commissioner.

13.    After the initial declaration of an emergency by Lynn Haven had been revoked and expired, **MICHAEL EDWARD WHITE** and **DAVID WAYNE HORTON** sought to locate additional Lynn Haven projects that could provide money to **DAVID MITCHELLE WHITE** and ECS.  One project was the Task Order that **M. WHITE** issued, ostensibly as part of the Emergency Agreement with ECS, to conduct trash pick-up, using a pick-up truck and a trailer, at a cost of $300 per hour per crew throughout Lynn Haven.  This action was implemented despite the ability of Lynn Haven waste trucks to pick-up large amounts of household trash and deposit large amounts of trash at the dump at no increased cost to Lynn Haven.

14.     **MICHAEL EDWARD WHITE** and **DAVID WAYNE HORTON** located numerous projects for ECS to handle that were outside the activities described in the Emergency Agreement or Task Order.  **M. WHITE** and **HORTON** had ECS employees wrap Christmas gifts, prepare locations for a Halloween party, and other miscellaneous acts that were not authorized under any agreement with Lynn Haven.  **DAVID MITCHELLE WHITE** and ECS submitted invoices that did not describe the actual activities performed, but instead falsely claimed the work was debris removal or cleaning activities.  **D. WHITE** and ECS billed Lynn Haven for a minimum of $35 per hour for ECS employees plus an ECS a supervisor at $90 per hour for these unauthorized activities.  **M. WHITE** and **HORTON** approved these invoices.

15.     On October 22, 2018, **DAVID WAYNE HORTON** sent a text message to **DAVID MITCHELLE WHITE** requesting an invoice from ECS for work done at **HORTON's** residence after the hurricane, and instructed the invoice be at least $3,500, if not more.  **D. WHITE** subsequently provided to **HORTON** an ECS invoice in the amount of $9,600 that was marked, "Paid in Full."  Then, **HORTON** submitted this invoice to an insurance company in support of his insurance claim for $9,600.  **HORTON** had not paid ECS or **D. WHITE** any money at the time that **HORTON** submitted the invoice as proof of his claim to an insurance company.

14

16.    On October 23, 2018, **DAVID MITCHELLE WHITE** and ECS submitted to Lynn Haven a false invoice for hurricane clean-up in the amount of $180,722.75 that claimed work by ECS was done at a Lynn Haven park and water plant on eight separate days.  The ECS supporting documents submitted to Lynn Haven for this fraudulent invoice included individuals who were working at locations outside Lynn Haven for a different contractor.  This invoice, and a separate ECS $44,000 invoice for painting a Lynn Haven building prior to the hurricane, were approved and paid by Lynn Haven as emergency expenditures. **MICHAEL EDWARD WHITE** issued a handwritten check in the amount of $224,722.75 to ECS within three days after the submission of the invoices.

17.    Included in the above described invoice, ECS billed Lynn Haven for clean-up activities by individuals who were Greenleaf employees, working out of ECS.  **JOSHUA DANIEL ANDERSON** simultaneously submitted a false invoice to Lynn Haven in the amount of $50,004.00 for alleged debris clean-up at the same Lynn Haven locations.  **MICHAEL EDWARD WHITE** approved the payment to **ANDERSON** and Greenleaf, and on November 7, 2018, issued a handwritten Lynn Haven check to Greenleaf totaling $66,402.58, which included $16,398.58 for alleged lawn services provided by Greenleaf after the hurricane.

18.     Eight days after Hurricane Michael, in October 2018, **JOSHUA DANIEL ANDERSON** and Greenleaf submitted a false invoice in the amount of $22,658.25, claiming to have provided lawn services to Lynn Haven and claiming "half month service" after the hurricane at various Lynn Haven locations. **MICHAEL EDWARD WHITE** approved payment of the invoice and issued a handwritten, manual counter check on the account of Lynn Haven in the amount of $22,658.25.

19.     In November 2018, **JOSHUA DANIEL ANDERSON** and Greenleaf submitted two false invoices, each in the amount of $16,603.62, for "half month service" for lawn care at 37 separate locations in Lynn Haven for the month of November.  **MICHAEL EDWARD WHITE** and **DAVID WAYNE HORTON** approved and directed the payments from Lynn Haven to **ANDERSON** and Greenleaf in the total amount in excess of $33,000.

20.     On October 30, 2018, a false invoice for hurricane clean-up in the amount of $202,230.56 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that claimed work by ECS was done at two Lynn Haven parks during a seven day period.  No supporting documents for the invoice were submitted.  ECS merely claimed that various numbers of individuals were utilized by ECS at pay rates consistent with FEMA reimbursement.  This invoice was approved by **MICHAEL EDWARD WHITE**, who directed employees of Lynn

16

Haven to issue a check to ECS in the amount of the invoice. A Lynn Haven check in the amount of $202,230.56 was issued to ECS on November 15, 2018.

21.     On November 6, 2018, a false invoice for hurricane clean-up in the amount of $428,816.13 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed work by ECS was done at two parks and two cemeteries during a seven day period. No supporting documents for the invoice were provided. Subsequent investigation of the invoice revealed that ECS falsely claimed an excessive number of workers (54), and an overage for equipment such as trucks and dump trailers. This invoice was approved by **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice. This invoice was included in the payment of three invoices to ECS in a Lynn Haven check issued to ECS on November 15, 2018, totaling $1,288,716.54.

22.     On November 12, 2018, a false invoice for hurricane clean-up in the amount of $527,512.65 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed work by ECS was done at a cemetery and at sports complexes during a seven day period. Instead of doing the work at the locations described, ECS workers conducted debris removal and clean-up at the residence of **MICHAEL EDWARD WHITE** located in Lynn Haven, **M. WHITE's** farm located outside of Lynn Haven in Bay County, and the residences

17

of the Mayor of Lynn Haven and her mother.  The work on these private

residences was concealed and not reported in the invoices, and no supporting

documents to the invoice were provided.  The invoice was approved by

**MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay

this invoice.  This invoice was included in the payment of three invoices to ECS in

a Lynn Haven check issued to ECS on November 15, 2018, totaling $1,288,716.54.

23.    On November 13, 2018, a false invoice for hurricane clean-up in the

amount of $332,387.76 was submitted to Lynn Haven by **DAVID MITCHELLE**

**WHITE** and ECS that falsely claimed trash pick-up was conducted by ECS during

a fourteen day period starting on October 18, 2018.  No documentation was

submitted in support of this invoice.  The claimed trash pick-up did not occur, and

there was no record of any trash being dumped at the Bay County refuse location,

nor did **MICHAEL EDWARD WHITE** obtain approval from Bay County for

ECS to use the account of Lynn Haven to dump items at the Bay County facility

until at least October 31, 2018.  This invoice was approved by **M. WHITE** who

directed employees of Lynn Haven to pay this invoice.  This invoice was included

in the payment of three invoices to ECS in a Lynn Haven check issued to ECS on

November 15, 2018, totaling $1,288,716.54.

24.    For the invoice submitted on November 12, 2018, described in

paragraph #22 above, **DAVID MITCHELLE WHITE** and ECS submitted false

18

Daily Time Sheets purporting to show numerous individuals worked 12 hours per day on November 11, 2018.  These time sheets were prepared by **SHANNON DELORES RODRIGUEZ**, who also prepared time sheets for the same day for ECS to pay its employees.  The payroll time sheets prepared by **RODRIGUEZ** and used to pay ECS employees listed most of the employees as not working when only a few actually worked on that day.

25.     Prior to mid November 2018, **MICHAEL EDWARD WHITE** allowed **DAVID MITCHELLE WHITE** and **JOSHUA DANIEL ANDERSON** to obtain fuel for ECS and Greenleaf vehicles at Lynn Haven fuel facilities for no charge.  This activity was in violation of the contracts that ECS and Greenleaf had with Lynn Haven, requiring ECS and Greenleaf to pay for fuel for its vehicles and equipment.

26.     On November 29, 2018, a false invoice for hurricane clean-up in the amount of $297,920.82 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed work by ECS was done at a sports complex, some Lynn Haven streets, and two water stations during a seven day period starting after Thanksgiving Day in 2018.  Supporting documents provided with the invoice falsely claimed that 61 individuals were at each of the locations for eleven hours daily.  This invoice was approved by **MICHAEL EDWARD WHITE,** who directed employees of Lynn Haven to pay this invoice.  This invoice was included

in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on

November 30, 2018, totaling $433,365.85.

27.   On November 29, 2018, a false invoice for hurricane clean-up in the

amount of $135,445.03 was submitted to Lynn Haven by **DAVID MITCHELLE**

**WHITE** and ECS that falsely claimed trash pick-up was conducted by ECS during

a seven day period starting on November 23, 2018, (the day after Thanksgiving).

There were only 6 dump tickets from the Bay County refuse location for this time

period, for which **D. WHITE** and ECS charged Lynn Haven $19,349 per day.

This invoice was approved by **MICHAEL EDWARD WHITE** who directed

employees of Lynn Haven to pay this invoice.  This invoice was included in the

payment of two invoices to ECS in a Lynn Haven check issued to ECS on

November 30, 2018, totaling $433,365.85.

28.   In November and December 2018, a Lynn Haven Commissioner made

repeated requests for assistance from **MICHAEL EDWARD WHITE** to have

ECS clean up debris and trash in Osceola Point, a private residential community.

**M. WHITE** directed **DAVID MITCHELLE WHITE** to have ECS personnel

work in Osceola Point, which they did, removing debris.  The time spent by ECS

workers in clearing debris in the private community was paid to ECS by the

submission of subsequent false invoices that claimed ECS worked on projects in

Lynn Haven, concealing and not disclosing that ECS was actually being paid for work in a private community for which Lynn Haven had no responsibility.

29.     On December 13, 2018, a false invoice for hurricane clean-up in the amount of $330,228.14 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed work by ECS done at a sports complex, a park, and a water treatment and sewage plants during a 13 day period.  Supporting documents provided with the invoice falsely claimed that 57 individuals were at each of the locations for eleven hours daily.  Many of the individuals listed by ECS were not at the locations.  **D. WHITE** instead had some of his ECS employees conducting clean-up in Osceola Point, a location for which Lynn Haven was not responsible to conduct cleaning or debris removal.  This invoice was approved by **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice.  This invoice was included in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on December 14, 2018, totaling $515,731.31.

30.     On December 13, 2018, a false invoice for hurricane clean-up in the amount of $185,503.17 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed trash pick-up was conducted by ECS during a 13 day period starting on November 30, 2018.  The actual dump tickets from the Bay County refuse location for this time period did not support the claims of the invoice.  This invoice was approved by **MICHAEL EDWARD WHITE**, who

directed employees of Lynn Haven to pay this invoice. This invoice was included in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on December 14, 2018, totaling $515,731.31.

31.    In late December 2018, while **DAVID MITCHELLE WHITE** and ECS were providing services to Lynn Haven, **D. WHITE** paid for a week-long trip to the Gatlinburg, Tennessee area for **DAVID WAYNE HORTON** and his family, **JOSHUA DANIEL ANDERSON** and his family, **SHANNON DELORES RODRIGUEZ** and her family, a Bay County commissioner and his family, and **D. WHITE** and his family. **D. WHITE** paid more than $25,000 for the trip that included lodging, meals, entertainment, and rental vehicles for the two public officials.

32.    On December 26, 2018, a false invoice for hurricane clean-up in the amount of $244,725.85 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed work by ECS was done at various Lynn Haven locations during a nine day period. ECS falsely claimed a number of workers had worked during this period. This invoice was approved by **MICHAEL EDWARD WHITE,** who directed employees of Lynn Haven to pay this invoice. This invoice was included in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on December 31, 2018, totaling $725,941.09.

22

33.     On December 28, 2018, a false invoice for hurricane clean-up in the amount of $481,215.24 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed trash pick-up was conducted by ECS during a 17 day period starting on December 13, 2018, and continuing before and after Christmas Day, and through Christmas week.  The majority of ECS workers did not work for the two weeks before and after Christmas.  The invoice falsely claimed trash pick-up totalling between $21,000 and $32,000 per day during this period.  This invoice was approved by **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice.  This invoice was included in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on December 31, 2018, totaling $725,941.09.

34.     On January 13, 2019, a false invoice for hurricane clean-up in the amount of $416,420.84 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed work by ECS was done at various Lynn Haven locations during a 12 day period.  ECS falsely claimed a number of workers had worked during this period.  This invoice was approved by **MICHAEL EDWARD WHITE,** who directed employees of Lynn Haven to pay this invoice. This invoice was included in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on January 15, 2019, totaling $895,441.52.

35.     On January 13, 2019, three months after Hurricane Michael, a false invoice for hurricane clean-up in the amount of $479,020.68 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed trash pick-up was conducted by ECS during a 13 day period starting the day after New Year's Day.  The invoice also falsely claimed that between 11 and 13 crews were used to collect trash daily.  The invoice falsely claimed trash pick-up during this period totaling $32,278.68 per day for five days, $38,878.44 per day for seven days, and $45,478.20 for the last day.  This invoice was approved by **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice. This invoice was included in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on January 15, 2019, totaling $895,441.52.

36.     On January 20, 2019, a false invoice for hurricane clean-up in the amount of $216,487.92 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed work by ECS was done at various Lynn Haven locations during a six day period.  More than three months after Hurricane Michael, ECS falsely claimed identical and extensive debris removal from various Lynn Haven parks and the clearance of rights of way and access points.  This invoice was approved by **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice.  This invoice was included in the

24

payment of two invoices to ECS in a Lynn Haven check issued to ECS on January 31, 2019, totaling $433,259.16.

37.    On January 25, 2019, three months after Hurricane Michael, a false invoice for hurricane clean-up in the amount of $216,771.24 was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS that falsely claimed trash pick-up was conducted by ECS during a six day period.  The invoice also falsely claimed that crews were used to collect trash daily.  The invoice falsely claimed trash pick-up during this period totaling $38,878.44 per day for four days, $35,578.56 for one day, and $25,678.92 for the last day.  This invoice was approved by **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice.  This invoice was included in the payment of two invoices to ECS in a Lynn Haven check issued to ECS on January 31, 2019, totaling $433,259.16.

38.    On February 13, 2019, a false invoice in the amount of $13,800 for filling in three cemetery lots at Mt. Hope Cemetery in Lynn Haven was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS. ECS paid a company $6,000 to fill the three cemetery lots with dirt, but the ECS invoice was in the amount of $13,800.  ECS secured a false invoice in the amount of $12,000 from the company that had actually done the work.  **DANIEL WAYNE HORTON** received the invoice from ECS, approved it, and directed employees of

25

Lynn Haven to pay it.  A Lynn Haven check in the amount of $13,800 was issued

to ECS on February 15, 2019.

39.     On February 17, 2019, **MICHAEL EDWARD WHITE** asked

**DAVID MITCHELLE WHITE** if he wanted to buy his "farm and cows and

such" located in Bay County outside Lynn Haven.  **D. WHITE** agreed to pay **M.

WHITE** $300,000 for the farm.  On March 8, 2019, **D. WHITE** provided a

cashier's check in the amount of $300,000 to **M. WHITE** for the farm and a Trans

Am motor vehicle.  The source of the money paid to **M. WHITE** was the monies

paid by Lynn Haven to ECS for the invoices submitted after the hurricane for

alleged debris and trash removal and repair.

40.     On February 27, 2019, **MICHAEL EDWARD WHITE**

contacted **DAVID MITCHELLE WHITE** and asked him if **D. WHITE** could

"be under $20,000" for a metal roof at Sheffield Park, and to provide **M. WHITE**

with a bid and an additional bid.  **M. WHITE** described this matter to Lynn Haven

officials as an emergency matter arising from Hurricane Michael, despite having

occurred four months after the hurricane.

41.     On February 28, 2019, **MICHAEL EDWARD WHITE** sent a

a text message to **DAVID MITCHELLE WHITE** advising that **M. WHITE**

issued an arrest warrant for an individual who **D. WHITE** had problems with a day

earlier.  The individual was a subcontractor used by ECS at one of the Lynn Haven

locations and was unhappy with **D. WHITE** in failing to pay the individual for the services provided to ECS at a Lynn Haven location.

42.     On March 5, 2019, **MICHAEL EDWARD WHITE** sent a text message to **DAVID MITCHELLE WHITE** relating to Sheffield Park and requested three quotes.  **D. WHITE** did so, and provided **M. WHITE** with the ECS bid, which was the lowest bid of $85,550 for demolition and replacement of two sidewalks, removal of a couple of trees, and delivery and spreading of fill dirt.

43.     On March 11, 2019, **JOSHUA DANIEL ANDERSON** and Greenleaf submitted an invoice in the amount of $20,798.50 to Lynn Haven for installing flowers at Kinsaul Park.  **DAVID WAYNE HORTON** received the invoice from Greenleaf, approved it, and directed employees of Lynn Haven to pay it.  **MICHAEL EDWARD WHITE** approved the payment.  This invoice was included in the payment of two invoices to Greenleaf in a Lynn Haven check issued to Greenleaf on March 15, 2019, totaling $48,537.25.

44.     On March 12, 2019, **JOSHUA DANIEL ANDERSON** and Greenleaf submitted an invoice in the amount of $27,738.75 to Lynn Haven for installing flowers at Sheffield Park.  **DAVID WAYNE HORTON** received the invoice from Greenleaf, approved it, and directed employees of Lynn Haven to pay it.  **MICHAEL EDWARD WHITE** approved the payment.  This invoice was

27

included in the payment of two invoices to Greenleaf in a Lynn Haven check issued to Greenleaf on March 15, 2019, totaling $48,537.25.

45.     On March 13, 2019, an invoice in the amount of $85,550 for Sheffield Park work was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS.  This invoice related to work performed at Sheffield Park, and was approved by **DAVID WAYNE HORTON** and then **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice as a continuation of emergency work for ECS.  This invoice was included in the payment of three invoices to ECS in a Lynn Haven check issued to ECS on March 15, 2019, totaling $118,950.00.

46.     On March 13, 2019, an invoice in the amount of $22,789.00 for Kinsaul Park work was submitted to Lynn Haven by **DAVID MITCHELLE WHITE** and ECS.  This invoice related to a concrete slab and wall installed at Kinsaul Park, and was approved by **DAVID WAYNE HORTON** and then **MICHAEL EDWARD WHITE**, who directed employees of Lynn Haven to pay this invoice.  Although noted on the Lynn Haven purchase order as not hurricane related, this work was not bid out as required as it was part of a series of work at several Lynn Haven parks at the same time.  This invoice was included in the payment of three invoices to ECS in a Lynn Haven check issued to ECS on March 15, 2019, totaling $118,950.00.

28

47.    As a result of discussions between **MICHAEL EDWARD WHITE,**

**DAVID MITCHELLE WHITE,** and **DAVID WAYNE HORTON** concerning

the fraudulent bid submissions for Sheffield Park, Cain Griffin, and Kinsaul Park

renovations, **D. WHITE** and ECS performed work at the three parks.  On March

27, 2019, ECS submitted three invoices to Lynn Haven seeking payment in the

amounts of $163,000 for Sheffield Park, $71,200 for Cain Griffin Park, and $9,000

for Kinsaul Park.  **DAVID WAYNE HORTON** approved the three invoices and

directed Lynn Haven employees to issue checks to ECS.  However, the acting City

Manager, who had replaced **MICHAEL EDWARD WHITE** on March 19, 2019,

blocked payment of the three invoices since a proper bid process had not occurred,

there was no contract in place for the work, it had not been approved by the City

Commission, and ECS had not pulled any permits for the work.  Further, ECS was

not licensed to perform the required electrical, plumbing, roofing, and construction

work at the parks.

48.    On April 12, 2019, **JOSHUA DANIEL ANDERSON** and Greenleaf

submitted an invoice in the amount of $147,350 to Lynn Haven for landscaping

work performed at Sheffield Park that consisted of installing sod, pine straw, and

irrigation work.  **DAVID WAYNE HORTON** approved the invoices and directed

Lynn Haven employees to issue a checks to Greenleaf.  However, the acting City

Manager, who had replaced **MICHAEL EDWARD WHITE** on March 19, 2019,

blocked the payment of the invoice as fraudulent, since Lynn Haven had purchased

the sod for Sheffield Park, and the installation of the sod could not have cost

$147,350.

49.    The conspirators performed acts and made statements to hide and

conceal, and cause to be hidden and concealed, the purpose of the conspiracy and

the acts committed in furtherance thereof.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH TWENTY

### A.  INTRODUCTION

The allegations of Count One are hereby realleged and incorporated by

reference as if fully set forth herein.

### B.  THE CHARGE

Between on or about October 10, 2018, and on or about April 30, 2019, in

the Northern District of Florida and elsewhere, the defendants,

**MICHAEL EDWARD WHITE,**
**DAVID MITCHELLE WHITE,**
**DAVID WAYNE HORTON,**
**JOSHUA DANIEL ANDERSON,**
**and**
**SHANNON DELORES RODRIGUEZ,**
**a/k/a "Shannon Delores Harris,"**

did knowingly and willfully devise, and intend to devise, a scheme to defraud and

for obtaining money and property by means of material false and fraudulent

pretenses, representations, and promises, and for the purpose of executing such scheme, did cause wire communications to be transmitted in interstate and foreign commerce.

## C.  SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

The allegations of Count One, Section C, Paragraphs 1-49, are hereby realleged and incorporated by reference as if fully set forth herein.

## D.  WIRE COMMUNICATIONS

On or about the following dates, for the purpose of executing the scheme to defraud, the defendants,

**MICHAEL EDWARD WHITE,**
**DAVID MITCHELLE WHITE,**
**DAVID WAYNE HORTON,**
**JOSHUA DANIEL ANDERSON,**
**and**
**SHANNON DELORES RODRIGUEZ,**
**a/k/a "Shannon Delores Harris,"**

knowingly did cause wire communications to be transmitted in interstate and foreign commerce as set forth below:

| COUNT | DATE | WIRE COMMUNICATION |
|:---:|:---:|:---:|
| TWO | October 22, 2018 | Text messages **HORTON/D.WHITE** |

31

| THREE | October 26, 2018 | Deposit of $224,722.75 check and related wire |
|---|---|---|
| FOUR | November 1, 2018 | Deposit of $22,658.25 check and related wire |
| FIVE | November 7, 2018 | Deposit of $66,402.58 check and related wire |
| SIX | November 15, 2018 | Deposit of $16,603.62 check and related wire |
| SEVEN | November 15, 2018 | Deposit of $202,230.56 check and related wire |
| EIGHT | November 15, 2018 | Deposit of $1,288,716.54 check and related wire |
| NINE | November 30, 2018 | Deposit of $16,603.62 check and related wire |
| TEN | November 30, 2018 | Deposit of $433,365.85 check and related wire |
| ELEVEN | December 14, 2018 | Deposit of $515,731.31 check and related wire |
| TWELVE | December 31, 2018 | Deposit of $725,941.09 check and related wire |
| THIRTEEN | January 15, 2019 | Deposit of $895,441.52 check and related wire |
| FOURTEEN | January 28, 2019 | Text Message **M. WHITE/HORTON** |
| FIFTEEN | January 31, 2019 | Deposit of $433,259.16 check and related wire |
| SIXTEEN | February 27, 2019 | Text message **M.WHITE/D.WHITE** |
| SEVENTEEN | February 28, 2019 | Text message **M.WHITE/D.WHITE** |
| EIGHTEEN | March 5, 2019 | Text message **M.WHITE/D.WHITE** |
| NINETEEN | March 11, 2019 | Deposit of $118,950.00 check and related wire |
| TWENTY | March 15, 2019 | Deposit of $48,537.25 check and related wire |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-ONE

Between on or about October 10, 2018, and on or about April 30, 2019, in the Northern District of Florida, and elsewhere, the defendants,

### MICHAEL EDWARD WHITE
### and
### DAVID WAYNE HORTON,

being agents of an organization and agency of the local government, that is, the City of Lynn Haven, Florida, receiving in the one-year period beginning October 10, 2018, benefits in excess of $10,000 under a federal program involving grants, contracts, subsidies, loans, guarantees, and other forms of federal assistance, did knowingly embezzle, steal, obtain by fraud, without authority convert to the use of a person other than the rightful owner, and intentionally misapply property that was valued at $5,000 or more and under the care, custody, and control of such organization, local government, and agency.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNTS TWENTY-TWO THROUGH THIRTY-TWO

### I. Introduction

1.     Paragraphs 1 through 16 of Count One are realleged and incorporated by reference as if fully set forth herein.

33

## II.  The Charge

2.      Between on or about October 10, 2018, and on or about April 30, 2019, in the Northern District of Florida and elsewhere, the defendants,

**MICHAEL EDWARD WHITE**
and
**DAVID WAYNE HORTON,**

did knowingly and willfully devise and intend to devise a scheme to defraud and deprive the City of Lynn Haven and its citizens of their right to the honest services of **M. WHITE**, the City Manager for Lynn Haven, Florida, and **HORTON,** the Community Services Director for Lynn Haven, Florida, through bribery or kickbacks.

## III.  The Fraudulent Scheme

The fraudulent scheme is summarized in paragraphs 1 through 49 of Section C of Count One, which are realleged and incorporated by reference as if fully set forth herein.

## IV.  Wire Communications

3.      On or about the following dates, in the Northern District of Florida and elsewhere, the defendants,

**MICHAEL EDWARD WHITE**
and
**DAVID WAYNE HORTON,**

34

for the purpose of executing the fraudulent scheme, caused wire communications

to be transmitted in interstate commerce as set forth below.

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| TWENTY-TWO | October 22, 2018 | Text message from **HORTON** to **D. WHITE** |
| TWENTY-THREE | October 24, 2018 | Email from ECS to **HORTON** |
| TWENTY-FOUR | November 9, 2018 | Text messages from **M. WHITE** to **D. WHITE** and **D. WHITE to M. WHITE** |
| TWENTY-FIVE | November 12, 2018 | Text message from **M. WHITE** to **D. WHITE** |
| TWENTY-SIX | November 13, 2018 | Text message from **M. WHITE** to **D. WHITE** |
| TWENTY-SEVEN | December 8, 2018 | Text message from **HORTON** to **M. WHITE** |
| TWENTY-EIGHT | December 26, 2018 | Text messages of **M. WHITE** and **D. WHITE** |
| TWENTY-NINE | January 7, 2019 | Text message of **M. WHITE** |
| THIRTY | January 28, 2019 | Text messages of **M. WHITE** and **HORTON** |
| THIRTY-ONE | February 17, 2019 | Text messages of **M. WHITE** and **D. WHITE** |
| THIRTY-TWO | February 27, 2019 | Text messages between **M. WHITE** and **D. WHITE** |

In violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNT THIRTY-THREE

Between on or about October 10, 2018, and on or about April 30, 2019,

in the Northern District of Florida and elsewhere, the defendants,

**DAVID MITCHELLE WHITE**
**and**
**MICHAEL EDWARD WHITE,**

knowingly made and presented, and caused to be made and presented, to the

Federal Emergency Management Agency (FEMA), a department and agency of the

United States, a materially false claim against the United States, knowing such

claim to be false, fictitious, and fraudulent, by filing, and causing to be filed,

fraudulent invoices to the City of Lynn Haven, Florida, for alleged post-hurricane

debris and related work, knowing that the City of Lynn Haven would cause the

invoices to be submitted for payment to FEMA for reimbursement to the City of

Lynn Haven for payments made to **D. WHITE** for alleged post-hurricane services.

In violation of Title 18, United States Code, Sections 287 and 2.

## COUNT THIRTY-FOUR

### A.  CHARGE

Between on or about October 10, 2018, and April 23, 2019, in the Northern

District of Florida and elsewhere, the defendant,

**DAVID WAYNE HORTON,**

did knowingly and willfully devise, and intend to devise, a scheme to defraud and

for obtaining money and property by means of material false and fraudulent

pretenses, representations, and promises, and for the purpose of executing such

scheme, did cause a wire communication to be transmitted in interstate commerce.

36

## B.  SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

The defendant, **DAVID WAYNE HORTON**, made and caused to be made false and fraudulent representations to the American Strategic Insurance Corp. ("ASI") concerning damages to his residence in Lynn Haven, Florida as a result of Hurricane Michael in order to fraudulently obtain money from the ASI insurance company.

1.  **DAVID WAYNE HORTON** represented in a claim that his residence had been damaged by Hurricane Michael and falsely represented that that he had paid for repairs to his residence totaling $9,600.

2.  In fact, repairs to the residence and property of **DAVID WAYNE HORTON** had been made by Erosion Control Specialist (ECS) at no cost to him as ECS received payment from the City of Lynn Haven for its employees making the repairs and conducting debris removal at his residence.  However, the City of Lynn Haven was not aware that ECS had made repairs to **HORTON's** personal residence, as the City of Lynn Haven was falsely billed for alleged work on City properties.

3.  To facilitate the scheme, **DAVID WAYNE HORTON** solicited ECS to create a false and fictitious invoice attesting to repair work done to his residence

after the hurricane by ECS in the amount of $9,600, which **HORTON** then submitted to ASI to support his fraudulent insurance claim.

4.     Based upon the false claim, ASI issued a payment in the amount of $5,600.00 to **DAVID WAYNE HORTON**.  This payment was mailed to **HORTON's** address in Lynn Haven.  **HORTON** caused the ASI insurance check to be deposited into the bank account belonging to him and his wife.

5.     By this conduct, **DAVID WAYNE HORTON** fraudulently obtained approximately $5,600 in insurance funds to which he was not entitled.

### D.  MAILING

On or about November 21, 2018, for the purpose of executing the scheme to defraud, the defendant,

### DAVID WAYNE HORTON,

knowingly did, for the purpose of executing the fraudulent scheme and attempting to do so, caused to be transmitted by United States mail and private and commercial carrier, a $5,600 check through the United States Postal Service.

In violation of Title 18, United States Code, Sections 1341 and 2.

### COUNT THIRTY-FIVE

Between on or about October 10, 2018, and on or about April 30, 2019, in the Northern District of Florida and elsewhere, the defendants,

**MICHAEL EDWARD WHITE,**
**DAVID MITCHELLE WHITE,**
**DAVID WAYNE HORTON,**
**JOSHUA DANIEL ANDERSON,**
**and**
**SHANNON DELORES RODRIGUEZ,**
**a/k/a "Shannon Delores Harris,"**

did knowingly combine, conspire, confederate, and agree together and with other

persons to conduct and attempt to conduct financial transactions affecting interstate

and foreign commerce, that is, the interstate transfer of monetary instruments in the

form of United States currency within a financial institution, involving funds that

were proceeds of a specified unlawful activity, that is, conspiracy to commit wire

fraud and wire fraud, in violation of Title 18, United States Code, Sections 1343

and 1349, and that the defendants knew to be the proceeds of some form of

unlawful activity, with the intent to promote the carrying on of the specified

unlawful activity, in violation of Title 18, United States Code, Section

1956(a)(1)(A)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Thirty-Two and Thirty-

Four through Thirty-Five of this Indictment are hereby realleged and incorporated

by reference for the purpose of alleging forfeiture.  From their engagement in the

violations alleged in Counts One through Thirty-Two and Thirty-Four through

Thirty-Five of this Indictment, the defendants,

**MICHAEL EDWARD WHITE,**
**DAVID MITCHELLE WHITE,**
**DAVID WAYNE HORTON,**
**JOSHUA DANIEL ANDERSON,**
**and**
**SHANNON DELORES RODRIGUEZ,**
**a/k/a "Shannon Delores Harris,"**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections

981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c), any

and all of the defendants' right, title, and interest in any property, real and

personal, constituting, and derived from, proceeds traceable to such offenses,

including the following:

a.     Real properties located at 9483 and 9711 Highway 20 East,

Youngstown, Florida 32466, more particularly described as:

> Parcel No. 02796-000-000  (H):
> Begin at the Northwest Corner of Northwest ¼ of West ½ of the
> Southeast ¼ of the Southeast ¼ of Section 31, Township 1 North,
> Range 12 West for the POINT OF BEGINNING; thence run East
> 650.54' thence South 1326.72 feet to the North right-of-way of
> Highway 20, thence run West along that right-of-way 50 feet thence
> North 714.70 feet and thence West 603 feet; thence run North 604.07
> feet to the POINT OF BEGINNING.

> Parcel No. 02796-010-000  (N):
> Commence at the Northwest Corner of West ½ of Southeast ¼ of
> Southeast 31, Township 1 North, Range 10 west; thence run South

604.07 feet for the POINT OF BEGINNING; thence run East 603 feet; thence South 714.70 feet to the North right-of-way of Highway 20; thence West along right-of-way 605.96 feet; thence North 714.70 to the POINT OF BEGINNING.

The total description of which two separate parcels is as follows: The West one half of the Southeast Quarter of the Southeast of Section 31, Township 1 North, Range 12 West.

b.  2016 Dodge Ram Pickup, VIN# 1C6RR7LM1GS304089

c.  2019 Dodge Ram Truck, VIN# 1C6SRFKT9KN672418

d.  1993 International Truck, VIN# 1HTSDPPN0PH533763

e.  2013 Kenworth Dump Truck, VIN# 1NKDX4EX0DJ350365

f.  2013 Kenworth Dump Truck, VIN# 1NKDX4EX2DJ350366

g.  2013 Kenworth Dump Truck, VIN# 1NKDX4EX7DJ350363

h.  2013 Kenworth Dump Truck, VIN# 1NKDX4EX8DJ350372

i.  2019 Dodge Ram Hell Cat, VIN# 2C3CDZL9XKH502713

j.  1997 International Tractor/Truck, VIN# 2HSFBASR8VC023376

k.  2019 Triton Trailer, VIN# 4TCSM112XKH247309

l.  2018 Bye-Rite Trailer, VIN# 7F3B1UG29JR000185

m.  2015 Trailer, VIN# 5VTB1UG24FR002474

n.  2018 Dodge Ram Truck, VIN# 3C7WRTCL9JG120614

o.  2018 Dodge Ram Truck, VIN# 3C6UR5CL4JG148473

p.  1976 Pontiac Trans Am, VIN# 2W87Z6N561781

q.      2005 Oshko Concrete Mixer, VIN# 10TFAAC255S084634

r.      2005 Oshko Concrete Mixer, VIN# 10TFAAC255S086522

s.      2002 Oshko Concrete Mixer, VIN# 10TFAAC262S074150

t.      2006 Terex Concrete Mixer, VIN# 5DG8AU4T960011193

u.      2018 Trailstar Trailer, VIN# 4TM19KL22JB001285

v.      2019 Trailstar Trailer, VIN# 7J513ZT26KB001256

w.      2019 Suntracker Pontoon Boat, VIN# BUJ11386A919

x.      2018 Tracker Sportsman, VIN# BUJ57530K718

y.      2019 Sea-doo JetSki, VIN# YDV21814D919

z.      2019 Sea-doo JetSki, VIN# YDV24929E919

aa.     2001 Ford Truck, VIN# 1FDWW36S71EA76771

bb.     1997 Ford Truck, VIN# 1FTJW35H9VEA61067

cc.      2000 GMC Truck, VIN# 1GDG6H1B6YJ905565

dd.     2000 GMC Truck, VIN# 1GDG6H1B6YJ906408

ee.     2019 Empire Cargo Trailer, VIN# 7F81E2021KD0065372017

ff.     Big Tex Trailer, VIN# 16VEX2028H3088695

gg.     2018 Ford Truck, VIN# 1FMJU1KTXJEA11481

hh.      2018 Ford Truck, VIN# 1FT7W2BT7JEC35872

ii.     2017 Ford Truck, VIN# 1FTEW1EF3HFC36447

jj.     1993 Jeep, VIN# 1J4FY29S9PP222602

kk.    1998 Eurosport Boat, VIN# ESJ00677F798

ll.    2002 Performance Trailer, VIN# 4DZBA19265P122974

mm.   1989 pontoon boat, VIN# BUJ45441K889

nn.    2002 Boat, VIN# GDYS1109H102

oo.    Mobile concrete batch plant

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendants:

    i.     cannot be located upon the exercise of due diligence;

    ii.    has been transferred, sold to, or deposited with a third party;

    iii.   has been placed beyond the jurisdiction of this Court;

    iv.    has been substantially diminished in value; or

    v.     has been commingled with other property that cannot be

        subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c),

43

to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property.

A TRUE BILL:

_____
FOREPERSON

_____
11/06/2019
DATE

_____
LAWRENCE KEEFE
United States Attorney

_____
STEPHEN M. KUNZ
Assistant United States Attorney